MELINDA HAAG (CABN 132612)
United States Attorney

J. DOUGLAS WILSON (DCBN 412811)
Chief, Criminal Division

BRIGID S. MARTIN  (CABN 231705)
Assistant United States Attorney

  1301 Clay Street, Suite 340S
  Oakland, CA 94612
  Telephone: (510) 637-3680
  Fax: (510) 637-3724
  E-Mail: brigid.martin@usdoj.gov

Attorneys for the United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. CR 11-00836-2 SBA |
| v. | UNITED STATES' SENTENCING MEMORANDUM |
| ISMAEL EDUARDO AXTLE, | Hearing Date: September 23, 2013 |
| Defendant. | Time: 10:00 a.m. |

The United States requests that the Court sentence Defendant Ismael Axtle to a total term of 276 months in prison, a five-year term of supervised release, $3,342.20 restitution, and impose a $700 special assessment, for conviction on charges of interference with commerce by robbery (Counts One and Five); carjacking (Counts Two and Six); being a felon in possession of a firearm (Count Three); possession with intent to distribute 50 grams or more of a mixture or substance containing methamphetamine (Count Four); and possession and brandishing of a firearm in furtherance of a crime of violence (Count Seven).  The government's recommended sentence is precisely what is set forth in the binding Plea Agreement entered by and agreed to by the parties, and submitted to the Court.

I.   STATEMENT OF FACTS

On December 5, 2011, Axtle was charged by Criminal Complaint with being a felon in possession of a firearm. On March 15, 2012, Axtle was charged in a Superseding Indictment. Although this was the first federal criminal charging document filed against Axtle, it was a *Superseding* Indictment because there had already been a previous indictment filed against codefendant McConnell. Pursuant to the final Plea Agreement reached between the parties, however, the government ultimately filed a Superseding Information against Axtle streamlining the counts to which he had agreed to plead. On May 14, 2013, Axtle waived indictment and was arraigned on the Superseding Information. Also on May 14, 2013, Axtle entered a guilty plea before Magistrate Judge Westmore pursuant to the Plea Agreement. Judge Westmore subsequently recommended that the Court accept the guilty plea.

Pursuant to the Superseding Information, Axtle has been charged as follows, and will plead to all seven counts set forth herein:

| COUNT | CHARGE | DATE | LOCATION |
|---|---|---|---|
| 1 | 18 U.S.C. § 1951(a) – interference with commerce by robbery | 7/27/2011 | North Beach Parking 85 5th St San Francisco |
| 2 | 18 U.S.C. § 2119 – carjacking | 8/5/2011 | 7th St & Howard St San Francisco |
| 3 | 18 U.S.C. § 922(g)(1) – felon in possession of firearm | 9/9/2011 | Turlock and Northern District |
| 4 | 21 U.S.C. § 841(a)(1) – possession of meth for sale | 9/9/2011 | Turlock and Northern District |
| 5 | 18 U.S.C. § 1951(a) – interference with commerce by robbery | 11/17/2011 | Anna's Massage 308 Vallejo St Petaluma |
| 6 | 18 U.S.C. § 2119 – carjacking | 11/18/2011 | Oakland |
| 7 | 18 U.S.C. § 924(c) – using/carrying a firearm during and in relation to a crime of violence | 11/18/2011 | Oakland |

In addition to the counts to which Axtle is pleading guilty, he has also admitted additional conduct which may be relevant for sentencing. This conduct is set forth following the factual admissions Paragraph 2 of the Plea Agreement, in addition to the facts forming the bases for his

U.S. SENT. MEM.
CR 11-00836-2 SBA                              2

1 guilty pleas for the counts of conviction.

2     A.    OFFENSE CONDUCT

3 The counts charged in the Superseding Information – the counts of conviction in this case – stem from five separate incidents occurring on 7/27/2011 (Axtle and his codefendant robbed a parking garage in San Francisco), 8/5/2011 (Axtle carjacked a BMW in San Francisco), 9/9/2011 (Axtle carried drugs and a firearm in the carjacked BMW down to Turlock in the Eastern District of California), 11/17/2011 (Axtle and unknown coconspirators robbed a massage parlor in Petaluma), and 11/18/2011 (Axtle carjacked a family in an SUV at gunpoint during a police chase from law enforcement).

**Count One: 7/27 robbery/carjacking** (Presentence Report (PSR), ¶¶ 8-9)

On July 27, 2011, at approximately 6:00 a.m., Axtle and codefendant McConnell (already sentenced), robbed the North Beach parking garage at 85 5th Street in San Francisco. McConnell drove a silver BMW into the parking garage. Axtle was in the front passenger seat wearing a black wig. The two men got out of the car – both holding firearms – and approached the parking attendant. McConnell ripped out the security camera to avoid detection and took it from the scene. The men robbed the attendant and also stole an Acura from the garage. During the robbery/carjacking, one of the defendants hit the attendant with the gun, lacerating his forehead.

Officers later found inside a car driven by codefendant McConnell the video surveillance device that had been taken from the North Beach parking garage. Officers reviewed the surveillance DVD inside the recorder. The DVD contained footage of McConnell and Axtle driving into the garage and approaching the parking attendant. The screen then goes blank when McConnell ripped out the camera during the robbery.

The victim of the carjacking has submitted a victim impact statement and Probation has recommended in McConnell's case to impose $3,342 restitution for this victim. Axtle should be jointly and severally liable for this amount as well.

**Count Two: 8/5 carjacking** (PSR, ¶ 10)

On August 5, 2011, at approximately 4:00 a.m., Axtle carjacked a 2006 BMW 325i sedan at the intersection of Howard and 7th Streets in San Francisco. Between 3:00 and 4:00 a.m., the

U.S. SENT. MEM.
CR 11-00836-2 SBA                 3

male victim was standing outside a club in San Francisco when the victim met Axtle. The victim and Axtle decided to drive around and have a conversation. Axtle told the victim to pull over near Howard and 7th Streets. Axtle pointed a gun at the victim driver, told him to get out, and took the BMW. The victim positively identified Axtle from a photo six-pack as the carjacker.

**Counts Three and Four: 9/9 possession of gun and drugs for sale** (PSR, ¶¶ 11-21)

On September 9, 2011, police located and attempted to arrest Axtle at a hotel in Turlock. Axtle was seen driving to the hotel in the BMW he carjacked on August 5, 2011 (in Count Two) in San Francisco. Police recovered the stolen BMW with approximately 72.4 grams (net weight) of a substance or mixture containing methamphetamine, and scales and packaging material inside of the car. On the same date, in Turlock, the defendant discarded a firearm while running from the police, a 9mm Glock Model 17 firearm, serial number USA0975, fitted with a large capacity magazine capable of holding seventeen (17) rounds, and loaded with eleven (11) rounds of ammunition. Axtle admitted that he brought the Glock down to Turlock with him from San Francisco in the BMW he stole in San Francisco.

The government did not extract facts or admissions from the defendant in Paragraph 2 of the Plea Agreement which would effectively establish possession of the firearm in connection with the drugs. Thus the parties did not agree in the Plea Agreement offense guideline calculations to the grouping or enhancement of the offense level for connection between these two offenses.

**Count Five: 11/17 robbery of massage parlor** (PSR, ¶¶ 22-25)

On November 17, 2011, at approximately 9:00 p.m., Axtle and an unidentified coconspirator conducted an armed robbery of Anna's Massage at 308 Vallejo Street in Petaluma.

At 8:00 p.m., either Axtle or his unidentified coconspirator used a prepaid cell phone later found in Axtle's car to call Anna's Massage and scheduled a one-hour massage for 8:30 p.m. At 9:00 p.m., the unidentified male coconspirator arrived at Anna's for the massage appointment. He paid $60 up front and was taken to massage room number 6. When the female massage therapist entered the room, the man immediately grabbed her, pulled her by her hair into the main living room area, and pointed a black gun at her. The man made all the employee victims sit on

U.S. SENT. MEM.
CR 11-00836-2 SBA                                     4

the ground in the living room.  At that point, Axtle, came into the living room.  Axtle and his coconspirator tied up one of the victims.  They stole the victim's wallets and jewelry.

Three of the four victims positively identified Axtle from a photo lineup as the second suspect involved in the robbery.  The day after the robbery, the victim's jewelry, one of the victim's wallets (including ID and several credit cards), a second victim's ID, two checks from Anna's Massage Parlor, and the cell phone used to call and make the appointment with the massage parlor the night of the robbery were all found in the car Axtle was driving while fleeing from police officers.

**Counts Six and Seven: 11/18 carjacking and possession of firearm in furtherance of carjacking** (PSR, ¶¶ 26-30)

On November 18, 2011, the day after the massage parlor robbery, several federal and local law enforcement agencies set out to surveil and apprehend Axtle on multiple warrants.  One of the CHP surveillance units made a visual identification of Axtle driving a Mercedes and informed OPD marked units that Axtle was driving a silver Mercedes near 28th Avenue in Oakland.  OPD officers responded and tried to pull Axtle over.  Axtle fled, subsequently crashing the Mercedes.  Axtle then waved his firearm at a family in a Chevrolet Equinox.  The driver of the Chevrolet reported that Axtle yelled, "Get out!  Get out!" in Spanish as he pointed the gun at her.  Axtle got into the SUV and sped away.  Axtle subsequently crashed the SUV and was apprehended by police officers.

OPD crime technicians recovered a black Glock Model 17 9mm caliber firearm, serial number ANW889, from the rear portion of the maroon Chevrolet Equinox SUV that Axtle had carjacked and crashed.  The Glock was loaded with one round in the chamber and eleven additional bullets in the magazine.

**Additional relevant conduct** (PSR, ¶¶ 32-33)

Although it is not charged in the Superseding Information, Axtle also admitted to the following additional conduct.  On July 26, 2011, he possessed in storage locker number 1127 at Storage Pro of Oakland, a .45 caliber Kimber handgun, serial number K254849; a Marlin 12 gauge shotgun, serial number KM108058; and 347 rounds of ammunition.  Furthermore, on

September 9, 2011, he had in the stolen BMW he drove to Turlock, several license plates and gift cards, and a counterfeit California Driver's License. Similarly, on November 18, 2011, he had in one of the cars he was driving various credit cards and gift cards, and a credit card reader. On November 18, 2011, he also admits to possessing in the Chevrolet SUV which he carjacked, a second gun, a .38 caliber Smith & Wesson revolver, serial number D291955.

II.  PLEA AGREEMENT AND AGREEMENT TO VARIANCE

The parties have agreed in the Plea Agreement to a fixed sentence of 276 months in prison (23 years). The parties agree that Defendant's total adjusted offense level is 35 and that his Criminal History Category is VI. The parties further agree that the Career Offender guidelines apply to his drug trafficking and violent crime convictions, and that the total resulting guidelines range encompassing all of the counts of conviction is 376-449 months imprisonment. Defendant also agrees that he faces a mandatory minimum term of imprisonment of 12 years (144 months) because the 924(c) conviction (possession of a firearm in furtherance of a crime of violence, specifically, brandishing), carries a mandatory consecutive 7 year term of imprisonment, and the 841(a)(1) conviction (possession of methamphetamine for sale), carries a mandatory minimum 5 year term of imprisonment.

Per the proposed agreement, the parties agree that Defendant should be sentenced to 23 years (276 months) in prison, 5 years of supervised release; forfeiture of all firearms and ammunition; and pay restitution as determined by the Court.

III.  UNITED STATES SENTENCING GUIDELINES CALCULATIONS

The agreed-upon guidelines in the parties' plea agreement have a total offense level of 35. Probation has determined a total offense level of 31. The parties and Probation all agree, however, that the Defendant is a Career Offender and thus the Career Offender guidelines should apply and Defendant falls into Criminal History Category VI.

This difference in the offense levels calculated by the parties and Probation seems to have occurred in large part due to an order-of-operations difference. Probation determined the offense level for each offense without regard to whether defendant was a career offender, grouped the appropriate offenses, and then applied the career offender status. But the parties determined the

U.S. SENT. MEM.
CR 11-00836-2 SBA                     6

guidelines for each offense – substituting in the career offender guidelines where applicable, and then grouped and added units as appropriate.

The government objects to the guidelines calculations set forth by Probation, in favor of the guidelines calculations set forth by the parties in the Plea Agreement. It is difficult to find authority on point showing that the parties' calculation is correct, but at least one Court has upheld a similar calculation in similar circumstances. The district court in *United States v. Cleveland*, 2011 WL 395690, at *3 (3d Cir. Dec. 17, 2011), seemed to group the counts of conviction, determine the applicable offense level based on the Career Offender Guideline, and then assign Unit points – just as we did in our plea agreement with Defendant Axtle. The Third Circuit affirmed describing and endorsing the District Court's calculation as follows:

> Nevertheless, on the resentencing the conscientious District Court made a plenary analysis of the factors leading to its calculation of Cleveland's guidelines range. The Court began by applying the guidelines grouping rules and determining that Cleveland's convictions on Counts One and Two, formed one group, and his carjacking conviction on Count Four constituted a second group. The Court determined that for the first group Cleveland's base offense level was 20 under U.S.S.G. § 2B3.1, but there would be a 4–level enhancement under U.S.S.G. § 2B3.1(b)(3)(B) because a victim, Heidi Shernoff, had suffered a serious bodily injury. However, inasmuch as Cleveland was a career offender under U.S.S.G. § 4B1.1, his offense level for this group was 32.
>
> The District Court then determined that the base offense level for Cleveland's carjacking conviction was also 20, but that there would be a 2–level enhancement to his sentencing level, pursuant to U.S.S.G. § 2B3.1(b)(5), because the offense involved carjacking. Inasmuch as Cleveland was a career offender, the total adjusted offense level for this group was 29. The Court then assigned one unit to each group, and determined that 2 points should be added to the offense level for the first group for a total offense level of 34.
>
> The District Court also determined that Cleveland had 9 criminal history points, a number that ordinarily would have placed him in criminal history category IV. However, because Cleveland was a career offender, his criminal history category was increased to level VI. The attorneys agreed with these rather complex calculations, and Cleveland does not challenge them on this appeal beyond contending that he is not a career offender.

In addition to the case law which reflects acceptance by at least one Court of the parties' calculation of the guidelines, the government notes that using Probation's calculation method results in only a single offense level number which correlates with the most serious offense. This method fails to truly assign punishment for each crime committed and, where victims are involved, fails to reflect consequences to the defendant for each victim injured. Essentially, it

U.S. SENT. MEM.
CR 11-00836-2 SBA                                           7

means that whether the defendant committed one crime or several crimes, his offense level would be the same. This does not seem to be fair or afford proper acknowledgment for separate victims and crimes. Moreover, although Probation argues that the guidelines must always be applied front to back, there appear to be exceptions to this general principle. For example, the government notes that even after career offender offense levels are applied, one may still go back to Chapter 3 and apply adjustments for acceptance of responsibility under 3E1.1. If the guidelines must always be applied from front to back, then it would seem the case that if grouping cannot occur post-career offender offense level application, then neither could acceptance of responsibility be applied. For all these reasons, the government believes its calculation of the guidelines set forth in the Plea Agreement is correct.

Ultimately, however, regardless of the Court's determination of the correct guidelines calculation, the parties and Probation all agree that the appropriate sentence in this case is 23 years imprisonment. Therefore, the government requests that the Court to accept the Plea and Plea Agreement, and sentence the Defendant to the 23-year sentence agreed on by all parties and endorsed by Probation.

IV.   SENTENCING ARGUMENT

After *United States v. Booker*, 543 U.S. 220 (2005), the United States Sentencing Guidelines are no longer mandatory, but are advisory. *United States v. Carty*, 520 F.3d 984, 990 (9th Cir. 2008). Sentencing proceedings begin by correctly calculating the applicable Guidelines range. *Id.* at 991. In this sense, the Guidelines are "the starting point and the initial benchmark." *Id.* The sentencing court should then consider the 18 U.S.C. § 3553(a) factors to further determine what sentence would be reasonable and appropriate. *Id.* at 991-92. If the sentencing court decides that a sentence outside the Guidelines is warranted, the court must consider the extent of the deviation and ensure that the justification is significantly compelling to support the degree of the variance. *Id.* at 991.

The parties have agreed in their Plea Agreement that a 23-year sentence is appropriate, and U.S. Probation concurs. The overarching tenet of the Sentencing Commission and 3553(a) is to give the defendant a sentence "no greater than necessary" to meet the goals of sentencing, and

the reasons stated below support imposition of a 23-year sentence rather than a higher or lower sentence.

First, Defendant has agreed to waive venue and/or provide facts that give us venue to charge him with having meth for sale and having another gun, which he was arrested for in Turlock (EDCA). The drug conviction carries the Defendant's highest offense level and thus heavily impacts Defendant's final sentencing guidelines range. Without the drug conviction, Defendant's guidelines range would be 319-377 months. Two hundred seventy-six months is just slightly lower than this range.

Next, Defendant's prior sentences have been relatively short – 148 days, 147 days, 18 days, and 3 years. Defendant actually served less than 3 years in total on all of these sentences. Most importantly, a 23-year sentence protects the community from Defendant for a significant amount of time. It will also keep Defendant incarcerated for the rest of his young to mid-adult life, the time during which statistically Defendant is more likely to commit crime. Defendant is now 30 years old. He will get out of prison around age 50 (estimated).

The codefendant McConnell was also convicted on some of the same counts as Axtle. McConnell pleaded guilty to the parking garage robbery and carjacking, as well as additional unrelated gun possession and meth possession-for-sale counts. McConnell was sentenced by the Court to 157 months (just over 13 years) in prison. The parking garage robbery was among the most serious crimes either defendant committed, and the only crime which resulted in relatively serious physical injury to a victim who was hit on the head with a firearm. While Axtle does have additional violent crimes which should result in him getting more time than McConnell, an additional 10 years seems appropriate based on the other considerations above, especially since the violent crime that both defendants were involved in was the crime that resulted in the most physical harm to a victim. Thus, the sentences of the codefendants are appropriate relative to one another.

Finally, due to the variety of crimes, the violence actually inflicted on victims, and potential harm brought by Defendant to several Bay Area communities as well as Turlock in the Eastern District of California, Defendant needs to receive a lengthy sentence not only to punish

U.S. SENT. MEM.
CR 11-00836-2 SBA                                9

him for the harm and potential harm he caused and protect the community from another violent streak, but also to deter Defendant and those similarly situated from committing violent crimes in the future. This is not a defendant who committed non-violent drug offenses, this is not a defendant who committed several different crimes during a single transaction or even a single day. This Defendant went on a crime spree which spanned cities from Petaluma to Turlock, victimizing individuals as well as entire communities until the time of his capture, even then during which the defendant put drivers at risk all over the Bay Area as he tried to elude capture by engaging in a high-speed chase, wrecking multiple vehicles, and carjacking a family at gunpoint. A 23-year sentence is absolutely necessary to protect the community and punish the Defendant for his criminal conduct.

V.   UNITED STATES' SENTENCING RECOMMENDATION

For the foregoing reasons, as well as the reasons set forth in the presentence report, the United States respectfully requests that the Court accept the Defendant's plea and adopt the sentence agreed upon by the parties in the Plea Agreement, and recommended by U.S. Probation, and sentence Defendant to a term of imprisonment of 276 months followed by 5 years of supervised release, impose $3,342.20 restitution, order Defendant to pay a $700 special assessment, and order forfeiture of the firearms and ammunition involved in Defendant's offenses.

DATED:     September 13, 2013           Respectfully Submitted,

                                        MELINDA HAAG
                                        United States Attorney


                                        /s/ Brigid S. Martin
                                        BRIGID S. MARTIN
                                        Assistant United States Attorney

U.S. SENT. MEM.
CR 11-00836-2 SBA                  10